**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 5, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DEBORAH LAUFER,

    Plaintiff - Appellant,

v.

RANDALL J. LOOPER; CYNTHIA C.
LOOPER, d/b/a Elk Run Inn,

    Defendants - Appellees.

No. 21-1031

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:20-CV-02475-NYW)**
_____

Thomas B. Bacon, Thomas B. Bacon Law Office, Mount Dora, Florida, for Plaintiff-Appellant.

Stephen B. Rotter (Jennifer L. Gokenbach, with him on the brief), The Workplace Counsel, Denver, Colorado, for Defendant-Appellee.
_____

Before **TYMKOVICH**, Chief Judge, **HARTZ**, and **MATHESON**, Circuit Judges.
_____

**MATHESON**, Circuit Judge.
_____

Deborah Laufer is qualified as disabled under the Americans with Disabilities Act ("ADA") and is a self-described ADA "tester." In that capacity, she visited the

Elk Run Inn's online reservation system ("ORS") to determine whether it complied with the ADA, though she has no intention to stay there.

Ms. Laufer sued Randall and Cynthia Looper, the owners of the Elk Run Inn, alleging that the ORS lacked information about accessibility in violation of an ADA regulation. The district court dismissed Ms. Laufer's complaint without prejudice for lack of Article III standing because she failed to allege that she had suffered a concrete and particularized injury. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

### A. *ADA Title III*

Title III of the ADA "generally prohibits public accommodations from discriminating against individuals on the basis of disability." *Levorsen v. Octapharma Plasma, Inc.*, 828 F.3d 1227, 1229 (10th Cir. 2016). It provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

The Department of Justice promulgated a regulation under Title III stating that a place of public accommodation ("PPA") operating a "place of lodging" shall, "with respect to reservations made by any means," "[i]dentify and describe accessible features in the hotels and guest rooms offered through its reservations service in

2

enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs." 28 C.F.R. § 36.302(e)(1)(ii) (the "ORS Regulation").

B. *Ms. Laufer's Allegations*

Ms. Laufer, a resident of Pasco County, Florida, uses a wheelchair and requires accommodations due to her disability. In her complaint, she described herself as an "advocate of the rights of similarly situated disabled persons" and a "'tester' for the purpose of asserting her civil rights and monitoring, ensuring, and determining whether places of public accommodation and their websites are in compliance with the ADA." App. at 10.

The Loopers own the Elk Run Inn, a hotel in Craig, Colorado. Ms. Laufer alleged that the Elk Run Inn is a PPA.[1] She averred that the Loopers used an ORS for the Elk Run Inn "so that members of the public may reserve guest accommodations and review information pertaining to the goods, services, features, facilities, benefits, advantages, and accommodations of the Property." *Id.* at 12.

Ms. Laufer "visited the ORS for the purpose of reviewing and assessing the accessible features at the Property and ascertain[ing] whether it meets the requirements of 28 C.F.R. Section 36.302(e) and her accessibility needs." *Id.* She alleged that she was "unable to do so because Defendant failed to comply with the

---

[1] For purposes of this appeal, we assume that the Elk Run Inn satisfies the ADA's definition of "place of public accommodation." *See* 42 U.S.C. § 12181(7)(A).

requirements" of that regulation. *Id.* Specifically, Ms. Laufer said the Elk Run Inn's ORS "did not identify accessible rooms, did not allow for booking of accessible rooms and provided insufficient information as to whether the rooms or features at the hotel are accessible." *Id.* at 13.

These violations, Ms. Laufer claimed, infringed her "right to travel free of discrimination and deprive her of the information required to make meaningful choices for travel." *Id.* at 14–15. Because the ORS did not identify accessible rooms, "it is thereby more difficult to book a room at the hotel or make an informed decision as to whether the facilities at the hotel are accessible." *Id.* at 15.

Ms. Laufer further alleged that "[i]n the near future" she "intends to revisit Defendants' ORS in order to test it for compliance with 28 C.F.R. Section 36.302(e) and/or to utilize the system to reserve a guest room and otherwise avail herself of the goods, services, features, facilities, benefits, advantages, and accommodations of the Property." *Id.* at 14.

## C. *Procedural History*

Ms. Laufer sued the Loopers in federal district court, claiming violations of Title III of the ADA and its Colorado state law counterpart. The Loopers moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Ms. Laufer lacked standing and, alternatively, that she had failed to state a claim.

In response to the motion, Ms. Laufer submitted a sworn declaration. It largely repeated the allegations of her complaint, but added that her niece lives in

Colorado, she visits her there approximately once a year, and she "plans to travel . . . there as soon as the Covid crisis is over and it is safe to travel." *Id.* at 123. When she goes to Colorado, she "intend[s] to travel all throughout the State." *Id.*

The district court dismissed the complaint under Rule 12(b)(1) for lack of Article III standing, concluding that Ms. Laufer's alleged injury was neither concrete nor particularized. The court said Ms. Laufer had not alleged an intent to use the ORS to "book an accessible room for [her] actual use." *Id.* at 442. Absent such an intent, Ms. Laufer could not establish a concrete injury based solely on her accessing the noncompliant ORS.

## II. **DISCUSSION**

### A. *Standard of Review*

A party filing a 12(b)(1) motion may challenge the court's subject-matter jurisdiction through a facial or factual attack. *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020). "A facial attack assumes the allegations in the complaint are true and argues they fail to establish jurisdiction. A factual attack goes beyond the allegations in the complaint and adduces evidence to contest jurisdiction." *Id.* (citations omitted).

The district court noted it was "not clear whether Defendants assert a facial or factual challenge to the court's subject matter jurisdiction." App. at 435 n.2. It analyzed the motion to dismiss "as asserting both a facial and a factual challenge." *Id.* Because the Loopers have not adduced any evidence outside the pleadings to

contest jurisdiction, we address this issue as a facial challenge and review de novo.

*Collins v. Daniels*, 916 F.3d 1302, 1311 (10th Cir. 2019).

## B. *Legal Background*

The following describes (1) the general legal framework for Article III

standing and (2) recent Supreme Court decisions explaining the difference between

statutory violations and concrete injuries in fact.

### 1. Article III Standing

Article III of the Constitution permits federal courts to decide only "Cases" or

"Controversies." U.S. Const. art. III, § 2. "To establish a case or controversy, a

plaintiff must possess standing to sue." *S. Furniture Leasing, Inc. v. YRC, Inc.*, 989

F.3d 1141, 1145 (10th Cir. 2021). For Article III standing, a plaintiff must have (1)

"suffered an injury in fact," (2) that is "fairly traceable to the challenged action of the

defendant," and (3) that is likely to be "redressed by a favorable decision." *Lujan v.*

*Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (quotations and alterations omitted).

These requirements ensure that "the plaintiff has alleged such a personal stake in the

outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction."

*Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (quotations omitted).

This appeal turns on injury in fact—"an invasion of a legally protected interest

which is (a) concrete and particularized and (b) actual or imminent, not conjectural or

hypothetical." *Lujan*, 504 U.S. at 560 (quotations and citations omitted). For an

injury to be particularized, it "must affect the plaintiff in a personal and individual

way." *Id.* at 560 n.1. To be "concrete," an injury must be "real" rather than

"abstract." *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1190 (10th Cir. 2021). But "'concrete' is not necessarily synonymous with 'tangible.'" *Id.* at 1191 (quotations and alterations omitted). An alleged future injury is sufficiently imminent "if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quotations omitted).

## 2.  Recent Developments

In *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), and *TransUnion, LLC v. Ramirez*, 141 S. Ct. 2190 (2021), the Supreme Court explained that a statutory violation does not necessarily establish injury in fact.

### a.  Spokeo

In *Spokeo*, the Court explained that "Article III standing requires a concrete injury even in the context of a statutory violation." 136 S. Ct. at 1549. The plaintiff alleged that the defendant's website contained inaccurate biographical information about him in violation of the Fair Credit Reporting Act ("FCRA").[2] *Id.* at 1546. On appeal, the Ninth Circuit had concluded the plaintiff had standing because "Spokeo violated *his* statutory rights, not just the statutory rights of other people." *Id.* at 1546

---

[2] The FCRA requires covered entities to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports, to "notify providers and users of consumer information of their responsibilities under the Act," to "limit the circumstances in which such agencies provide consumer reports 'for employment purposes,'" and to "post toll-free numbers for consumers to request reports." *Id.* at 1545 (citing 15 U.S.C. §§ 1681e(b)(d), 1681b(b)(1), 1681j(a)).

(quoting *Robins v. Spokeo, Inc.*, 742 F.3d 409, 413 (9th Cir. 2014)).  But that analysis, the Supreme Court said, did not consider "whether the particular procedural violations alleged in this case entail a degree of risk sufficient to meet the concreteness requirement."  *Id.* at 1550.  In other words, the circuit court addressed "particularity" but ignored "concreteness."  *Id.*

The Court explained that, "[i]n determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles."  *Id.* at 1549.  First, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."  *Id.*  Second, "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important."  *Id.*  Thus, "Congress may elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law."  *Id.* (quotations and alteration omitted).  But the Court cautioned that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  *Id.*

b.  TransUnion

The Supreme Court expanded upon these principles in *TransUnion*. *TransUnion*, like *Spokeo*, involved an alleged violation of the FCRA.  The plaintiff could not purchase a car because, according to his TransUnion credit report, his name

8

matched that of an individual on the Treasury Department's Office of Foreign Asset Control ("OFAC") list. *TransUnion*, 141 S. Ct. at 2201. He brought a class action under the FCRA, alleging that TransUnion failed (1) to follow reasonable procedures to ensure the accuracy of information in his credit file, (2) to provide him with all the information in his credit file upon request, and (3) provide him with a required "summary of rights" "with each written disclosure." *Id.* at 2202.

The Court, building on its *Spokeo* analysis, emphasized that "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." *Id.* at 2205. "For standing purposes, therefore, an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *Id.* In other words, "under Article III, an injury in law is not an injury in fact." *Id.* "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *Id.* (quotations omitted). Thus, "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.*

### C. *Analysis*

The following discussion concludes that Ms. Laufer's complaint fails to establish injury in fact under *Spokeo* and *TransUnion*. It also concludes that the

cases Ms. Laufer relies upon for standing are distinguishable and fail to rescue her complaint from dismissal for lack of Article III jurisdiction. We therefore affirm the district court.

1. **No Injury in Fact under *Spokeo* and *TransUnion***

Ms. Laufer lacks Article III standing to pursue her claims against the Loopers because she has not suffered a concrete injury in fact. She contends that the ORS failed to provide the information she needed as a disabled person to access the Elk Run Inn.[3] Ms. Laufer has conceded, however, that she has no concrete plans to visit Craig, Colorado, or to book a room at the Elk Run Inn. She therefore has not alleged any concrete harm resulting from the Loopers' alleged violation of the ORS Regulation.[4]

Ms. Laufer counters that she suffered harm when she visited the Elk Run Inn's ORS and discovered it was non-compliant with the ORS Regulation. But a violation

---

[3] She has not alleged that she was unable to fully access the ORS itself.

[4] The district court rejected Ms. Laufer's contention that she "need not allege an intent to visit the physical PPA to suffer an injury in fact and has suffered an injury in fact based solely on the use of the noncompliant [ORS]." App. at 440. On appeal, she argues the district court "completely ignored the rules of statutory construction, the plain and unambiguous language of the statute and Regulation, and instead improperly imposed the additional requirement of 'intent' into the governing statutory language, where Congress had omitted it." Aplt. Br. at 12. But Ms. Laufer misapprehends the district court's Article III analysis as statutory interpretation. After the district court noted that Ms. Laufer did not intend to stay at the Elk Run Inn, it concluded that Ms. Laufer lacked Article III standing because she had not suffered a concrete and particularized injury in fact. The court was addressing a constitutional question and was not interpreting the statute or the ORS Regulation.

10

of a legal entitlement alone is insufficient under *Spokeo* and *TransUnion* to establish that Ms. Laufer suffered a concrete injury. "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 136 S. Ct. at 1549. And that concrete injury "must affect the plaintiff in a personal and individual way." *Id.* at 1548 (quotations omitted). Ms. Laufer did not suffer a concrete injury. The district court properly dismissed her action for lack of Article III jurisdiction.

2. **Ms. Laufer's Arguments**

Ms. Laufer relies primarily on three Supreme Court cases and two Tenth Circuit cases to argue she suffered an injury in fact and therefore has standing under Article III. Her reliance is misplaced because each of these cases is distinguishable. We address them below.

a. *Fair Housing Act Testers*

Ms. Laufer argues that she has been injured in much the same way as the Fair Housing Act ("FHA") "tester" in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). But the FHA tester in that case was given false information based on discrimination and, as we explain below, Ms. Laufer has made no comparable allegations here.

i. *Havens Realty*

In *Havens Realty*, the Supreme Court held that a "tester" could sue under the FHA. 455 U.S. at 374. The Court described "testers" as "individuals who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence of unlawful steering practices." *Id.* at 373.

11

Two "testers"—one Black and one White—sued Havens Realty after its agent falsely represented to the Black tester—but not the White tester—that no housing units were available. *Id.* at 368. They sued under the FHA, which made it unlawful for a covered individual or firm "to represent to *any person* because of race, color, religion, sex, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available." *Id.* at 373 (quoting 42 U.S.C. § 3604(d)) (alteration omitted). The statute also created an explicit cause of action. *Id.*; 42 U.S.C. § 3612(a).

Ms. Coleman, the Black tester, argued that she had suffered a "distinct and palpable injury." *Id.* at 372 (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). The Court agreed—she was given untruthful information about the availability of housing for discriminatory reasons. *Id.* at 374. She had standing to sue because she had "alleged injury to her statutorily created right to truthful housing information." 455 U.S. at 374. The White tester, Mr. Willis, did not have standing as a tester because the agent gave him accurate information about the availability of housing. *Id.* at 375.

The Court observed that the FHA confers on "all 'persons'" an "enforceable right to truthful information concerning the availability of housing." *Id.* at 373. Thus,

> [a] tester who has been the object of a misrepresentation
> made unlawful under [the FHA] has suffered injury in
> precisely the form the statute was intended to guard
> against, and therefore has standing to maintain a claim for
> damages under the Act's provisions. That the tester may

12

> have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of § 804(d).

*Id*. at 373–74.

### ii. Ms. Laufer's argument

Ms. Laufer argues that she has standing under *Havens Realty* because she is a "tester." But testers, like any other plaintiff, must satisfy the constitutional requirements of Article III. Ms. Laufer's status as a tester alone is insufficient to confer standing. *Havens Realty* is distinguishable because the plaintiff, Ms. Coleman, had suffered a concrete and particularized injury in fact.

Ms. Laufer further argues she suffered informational harm. She compares herself to Ms. Coleman, who had no intention of renting a home at the defendants' property but had standing under the FHA to sue for a violation of her "statutorily created right to truthful housing information." *Id.* at 374. Ms. Laufer argues that she similarly has standing under the ADA to sue for a violation of her legal entitlement to information even though she has no intention of booking a room at the Elk Run Inn. We disagree.

Ms. Coleman was not just denied information. On four separate occasions, she asked about housing availability and was given false information because of her race. Ms. Laufer has not alleged that the Loopers gave her false information. Nor has she alleged they denied her information because of her disability. All individuals, whether or not disabled, had access to the same information on the Elk Run Inn's

ORS. Ms. Laufer's alleged injury—her discovery that the ORS lacked certain information—is thus distinct from the injury suffered in *Havens Realty*, which was grounded in misrepresentation and racial animus. *See Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1005 (11th Cir. 2020) ("[T]he Fair Housing Act does not seek to vindicate some amorphous interest in receiving unusable housing information. Instead, it protects the weighty interest in not being subjected to racial discrimination, which can inflict a concrete injury on anyone who personally experiences it." (quotations omitted)); *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 904 (2d Cir. 1993) ("There is no significant difference between the statutorily recognized injury suffered by the tester in *Havens Realty* and the injury suffered by [plaintiffs] who were confronted by advertisements indicating a preference based on race.").

   b. *Informational Injury* – Public Citizen *and* Akins

   In addition to *Havens Realty*, Ms. Laufer cites two other Supreme Court decisions to support her informational harm theory of injury in fact.

      i. *Public Citizen*

   In *Public Citizen v. Department of Justice*, 491 U.S. 440 (1989), the plaintiffs argued that the American Bar Association's Standing Committee on the Federal Judiciary ("ABA Committee"), which the Department consulted to evaluate potential judicial nominees, should be subject to the notice requirements of the Federal Advisory Committee Act ("FACA"). *Id*. at 449. The plaintiffs sought "access to the

14

ABA Committee's meetings and records in order to monitor its workings and participate more effectively in the judicial selection process." *Id.*

Analogizing to Freedom of Information Act cases, the Court held that "refusal to permit appellants to scrutinize the ABA Committee's activities to the extent FACA allows constitutes a sufficiently distinct injury to provide standing to sue." *Id.* It noted that "decisions interpreting the Freedom of Information Act have never suggested that those requesting information under it need show more than that they sought and were denied specific agency records." *Id.*

    ii. *Akins*

In *FEC v. Akins*, 524 U.S. 11 (1998), a group of voters sought to compel the Federal Election Commission to designate the American Israel Public Affairs Committee ("AIPAC") as a "political committee" under the Federal Election Campaign Act of 1971. Doing so would require AIPAC to publicly disclose certain financial information. The Court explained, "[t]he 'injury in fact' that respondents have suffered consists of their inability to obtain information—lists of AIPAC donors . . . , and campaign-related contributions and expenditures—that, on respondents' view of the law, the statute requires that AIPAC make public." *Id.* at 21.

The Court found "no reason to doubt [the plaintiffs'] claim that the information would help them (and others to whom they would communicate it) to evaluate candidates for public office, especially candidates who received assistance from AIPAC, and to evaluate the role that AIPAC's financial assistance might play in a specific election." *Id.* It concluded that "the informational injury at issue here,

15

directly related to voting, the most basic of political rights, is sufficiently concrete and specific such that the fact that it is widely shared does not deprive Congress of constitutional power to authorize its vindication in the federal courts." *Id.* at 24–25.

### iii.  Ms. Laufer's argument

Ms. Laufer argues she has suffered an "informational injury" of the sort recognized in *Public Citizen* and *Akins*—that is, she has been deprived of information to which she is legally entitled.  Aplt. Br. at 27–40.  The Supreme Court's recent decision in *TransUnion* shows why this argument fails.  In that case the United States, participating as amicus, argued that the plaintiffs had suffered an "informational injury" under *Public Citizen* and *Akins* when TransUnion allegedly failed to provide them with required disclosures in a specified format under the FCRA.  The Court rejected this argument in part because "the plaintiffs have identified no 'downstream consequences' from failing to receive the required information." *TransUnion*, 141 S. Ct. at 2214 (quoting *Trichell*, 964 F.3d at 1004). "An asserted informational injury that causes no adverse effects cannot satisfy Article III." *Id.* (quotations omitted).[5]

In *Public Citizen* and *Akins*, the plaintiffs identified such adverse effects. They alleged an intent to use the information to participate in the judicial selection

---

[5] Although this statement from *TransUnion* is arguably dicta, we are "bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements." *N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1228 n.11 (10th Cir. 2021) (quotations omitted).

and the political process, respectively.  Thus, in both cases, the information the plaintiffs sought had "some relevance" to them.  *See Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 654 (4th Cir. 2019).

Unlike the plaintiffs in *Akins* and *Public Citizen*, Ms. Laufer has not alleged that she has any interest in using the information she obtained from the Elk Run Inn's ORS beyond bringing this lawsuit.  She has no plans to visit Craig, Colorado.  She did not attempt to book a room at the Elk Run Inn and has no intent to do so.  She therefore has not suffered an injury of the type recognized in *Public Citizen* or *Akins*.[6]

Although Ms. Laufer may have had a regulatory right to the information she sought here, she has not demonstrated that the defendants' failure to provide that information caused her to suffer an injury in fact.

---

[6] The Fifth Circuit recently said, to allege an informational injury, Ms. Laufer "would need to allege at least that the information had 'some relevance' to *her*." *Laufer v. Mann Hosp., LLC*, 996 F.3d 269, 273 (5th Cir. 2021) (quotations omitted); *see also Griffin*, 912 F.3d at 654 ("Inability to obtain information is sufficiently concrete to constitute injury in fact only when the information has some relevance to the litigant."); *Brintley v. Aeroquip Credit Union*, 936 F.3d 489, 493 (6th Cir. 2019) (same).

Ms. Laufer argues that, unlike the plaintiffs in *Griffin*, she is legally entitled to the information she seeks.  Aplt. Br. at 37-40.  But, as the Court explained in *Spokeo* and *TransUnion*, violation of a legal entitlement is not the same as an injury in fact.

c.  *ADA Testers* – Tandy *and* Colorado Cross Disability Coalition

Ms. Laufer also attempts to rely on Tenth Circuit cases holding that testers may have standing to sue under both Title II[7] and Title III of the ADA—*Tandy v. City of Wichita*, 380 F.3d 1277, 1287 (10th Cir. 2004) (Title II); *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014) (Title III).  These cases again are distinguishable.

    i.  <u>*Tandy*</u>

In *Tandy*, several ADA "testers" sued the City of Wichita alleging that its "fixed-route bus system was intentionally inaccessible to and unusable by people with disabilities."  380 F.3d at 1280.  Each plaintiff was disabled under the ADA. *Id.* at 1280 n.2.  Each "attempted to access Wichita Transit's fixed-route buses in order to test the system for accessibility."  *Id.* at 1281.

After determining that "testers" could bring a cause of action under Title II of the ADA, we separately analyzed whether each plaintiff had Article III standing.  We concluded that all but one had suffered an injury in fact because they had used or intended to use the bus service alleged to be noncompliant with the ADA:

- Plaintiff Goupil, who used a wheelchair, was "under a real and immediate threat of experiencing a lift malfunction" because he "averred that he intends to test

---

[7] Title II of the ADA makes it illegal for a public entity to discriminate against a qualified individual with a disability in the provision of government programs, activities, and services.  42 U.S.C. § 12132; *J.V. v. Albuquerque Pub. Schs.*, 813 F.3d 1289, 1295 (10th Cir. 2016).

Wichita Transit's fixed-route services several times per year." 380 F.3d at 1287.

- Plaintiff Donnell, who was vision impaired, "averred that she intends to test Wichita Transit's fixed-route buses several times per year," and "Wichita Transit's transit centers did not house any Braille materials and had limited Braille signage." *Id.* at 1288.

- Plaintiff Jeffries, who was hearing impaired, "averred that Wichita Transit's [Telecommunications Device for the Deaf ("TDD")] line never worked when she called it several times in the past," and "testified that she intends to call the TDD line once per month in the future." *Id.* at 1289.

We held that each of these plaintiffs had standing to pursue a Title II claim.[8]

Each had attempted to access a service—either the actual bus service or the TDD

information line—and was unable to do so because of a disability. Pointing to

*Havens Realty*, we concluded that the plaintiffs had standing to sue even though their

"sole purpose" was "to determine whether defendant engaged in unlawful practices."

*Id.* at 1285.

ii. *Colorado Cross Disability Coalition*

In *Colorado Cross Disability Coalition*, a tester sued the owners of a retail

store under Title III, alleging that their stores were inaccessible to individuals who

use wheelchairs. Extending *Tandy* to Title III, we held that "anyone who has

---

[8] By contrast, plaintiff Garnett did not have standing to seek prospective relief. He had "merely alleged, in the complaint, that he 'desires' to use Wichita Transit's fixed-route bus system." *Id.* at 1288. He "submitted no affidavit stating an intent to utilize Wichita Transit's fixed-route buses in the future." *Id.*

suffered an invasion of the legal interest protected by Title III may have standing, regardless of his or her motivation in encountering that invasion." 765 F.3d at 1211. But we also emphasized that "the fact that 'tester standing' exists under Title III does not displace the general requirements of standing." *Id.*

We concluded that the tester had Article III standing because she averred that she intended to return to the defendants' store at least six times per year. *Id.* This was enough to "suggest[] a concrete, present plan to return" to the store. *Id.* The tester therefore demonstrated "that she suffers a real and imminent threat of encountering the alleged accessibility barrier . . . in the future." *Id.* at 1212. Ms. Laufer, by contrast, has not alleged she will encounter any accessibility barriers because she has no intention of attempting to access the Elk Run Inn.

### iii. Ms. Laufer's argument

Citing these cases, Ms. Laufer again argues that "anyone," including a tester, "who has suffered an invasion of the legal interest protected by Title III may have standing, regardless of his or her motivation in encountering that invasion." *Id.* at 1211. But testers still must "satisfy the constitutional requirements of Article III." *Tandy*, 380 F.3d at 1287. "Like any plaintiff, a tester must demonstrate that she has indeed suffered a cognizable injury in fact that will be redressed by the relief sought." *Colo. Cross Disability Coal.*, 765 F.3d at 1211. Ms. Laufer's "assumed status as an 'ADA tester' does not absolve her of the need to show an injury in fact for standing purposes." *Mann Hosp.*, 996 F.3d at 273. In short, Ms. Laufer's status as a tester does not defeat standing, but nor does it automatically confer standing.

20

Ms. Laufer argues that her "encounter with discrimination" is "substantially similar" to that of Ms. Jeffries in *Tandy*. Aplt. Br. at 42. But Ms. Jeffries averred that she had attempted to access the TDD line—and planned to do so again in the future—and was unable to access the information she sought because the line itself was inaccessible to hearing impaired persons. *Tandy*, 380 F.3d at 1289. Here, on the other hand, Ms. Laufer has not alleged that she was prevented from accessing the ORS because of her disability. And her alleged intent to access the ORS again to test its compliance with the ADA does not suffice to establish a concrete injury.[9]

\*   \*   \*   \*

Ms. Laufer has disclaimed any interest in booking a room at the Elk Run Inn. She therefore has no concrete interest in the information required by the ORS Regulation, and has not suffered an injury in fact. Although testers may have standing under the ADA regardless of their motivations for encountering a violation, they still must satisfy the constitutional requirements of Article III. Because she has failed to do so, Ms. Laufer lacks standing to pursue her claims against the Loopers.

## III. CONCLUSION

We affirm the judgment of the district court.

---

[9] Ms. Laufer's brief does not present the "stigmatic" or "dignitary" harm theory of standing that the district court rejected below. *See* App. at 444–45. We therefore decline to address that theory of injury.