In the

United States Court of Appeals

For the Eleventh Circuit

———————————————

No. 20-14846

———————————————

DEBORAH LAUFER,

Plaintiff-Appellant,

*versus*

ARPAN LLC,
d.b.a. Americas Best Value Inn,

Defendant-Appellee.

———————————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 1:19-cv-00200-AW-GRJ

———————————————

2                          Order of the Court                          20-14846

Before WILLIAM PRYOR, Chief Judge, WILSON, JORDAN, ROSENBAUM, JILL PRYOR, NEWSOM, BRANCH, GRANT, LUCK, LAGOA, and BRASHER, Circuit Judges.

BY THE COURT:

A petition for rehearing having been filed and a member of this Court in active service having requested a poll on whether this case should be reheard by the Court sitting en banc, and a majority of the judges in active service on this Court having voted against granting rehearing en banc, it is ORDERED that this case will not be reheard en banc. Notwithstanding this order, the panel's stay of the issuance of the mandate pending a decision by the Supreme Court in *Acheson Hotels, LLC v. Laufer*, No. 22-429, remains in place.

20-14846    WILLIAM PRYOR, C.J., Respecting the Denial            1

WILLIAM PRYOR, Chief Judge, respecting the denial of rehearing en banc:

This appeal does not exist in a vacuum. Over the past few years, plaintiff Deborah Laufer has filed hundreds of actions across the country with materially identical facts and issues, several of which have reached our sister circuit courts. *See, e.g.*, *Laufer v. Acheson Hotels, LLC*, 50 F.4th 259 (1st Cir. 2022); *Laufer v. Naranda Hotels, LLC*, 60 F.4th 156 (4th Cir. 2023); *Laufer v. Mann Hosp., L.L.C.*, 996 F.3d 269 (5th Cir. 2021); *Laufer v. Looper*, 22 F.4th 871 (10th Cir. 2022). The standing analyses in these circuit court decisions have diverged widely. Catherine Cole, Note, *A Standoff:* Havens Realty v. Coleman *Tester Standing and* TransUnion v. Ramirez *in the Circuit Courts*, 45 HARV. J.L. & PUB. POL'Y 1033, 1035–42 (2022) (explaining the circuit split on this issue). But recently, the Supreme Court heralded an end to the split when it granted a petition for a writ of certiorari in one case. *See Acheson Hotels, LLC v. Laufer*, -- S. Ct. -- (Mar. 27, 2023) (No. 22-429). Although I agree with my dissenting colleague that the panel likely erred in deciding that Laufer has standing to maintain this action, I see no point in rehearing this appeal en banc now that the Supreme Court has granted review of the same issue. *Id.*

The Supreme Court will surely address the issues identified by my dissenting colleague, including not only whether Laufer had standing based on an informational injury but also whether she had standing based on a stigmatic injury. The hotel corporation argued against both theories of injury in its petition to the Supreme Court,

2            WILLIAM PRYOR, C.J., Respecting the Denial    20-14846

Petition for a Writ of Certiorari, *Acheson Hotels*, -- S.Ct. -- (No. 22-429), and Laufer argued in favor of both theories in her response, Brief in Opposition, *Acheson Hotels*, -- S.Ct. -- (No. 22-429); *see also* Grant Dissenting Op. at 6 n.3. To conclude that Laufer lacks standing—the broad question on which the Supreme Court granted review—the Supreme Court would have to consider both theories of injury. *See* Question Presented, *Acheson Hotels*, -- S.Ct. -- (No. 22-429) ("Does a self-appointed Americans with Disabilities Act 'tester' have Article III standing . . . ?"). If the Supreme Court determines that Laufer could not bring a suit in federal court based on an informational injury, it will also have to consider whether she could do so based on a stigmatic injury, and vice versa.

After the Supreme Court granted certiorari in *Acheson Hotels*, the panel stayed the issuance of the mandate in this appeal. I would expect future panels of our Court to stay any appeal that presents the same issue, pending the decision of the Supreme Court in *Acheson Hotels*. District court judges presented with cases that turn on this threshold issue of justiciability are free to follow our lead and grant a stay too. In situations like this one, we inferior-court judges sometimes judge best by judging least.

20-14846                    NEWSOM, J., Concurring                    1

NEWSOM, Circuit Judge, concurring in the denial of rehearing en banc:

I offer the following as a brief (p)response to Judge Grant's characteristically thoughtful opinion dissenting from the order denying rehearing en banc.

I

First, a point of raging agreement:  Judge Grant and I share a pretty profound skepticism of what I've called Deborah Laufer's "litigation program."  *Laufer v. Arpan LLC*, 29 F.4th 1268, 1290 (11th Cir. 2022) (Newsom, J., concurring).  Laufer is indeed, as Judge Grant notes, a "serial plaintiff."  Grant Dissental at 1.  And Laufer—a disability-rights advocate and self-proclaimed "tester"—is most definitely acting like a "roving attorney[] general."  *Id.* at 5.  In fact, I'll see Judge Grant's report that Laufer "has brought hundreds of nearly identical suits across the country," *id.* at 8, and raise her:  As I explained in my panel-stage concurring opinion, Laufer and two other plaintiffs—all conspicuously represented by the same lawyers—have filed more than 1000 website-related ADA suits against hotels during the last few years.  *See Laufer*, 29 F.4th at 1290, 1295 (Newsom, J., concurring).  The whole thing stinks to high heaven, and Judge Grant and I agree that Laufer's aggressive litigation tactics transgress constitutional limitations.  The lone difference is that Judge Grant grounds her position in Article III, whereas I contend (for reasons I've explained at length and won't rehash here) that Laufer's proactive exercise of enforcement discretion—selecting her targets, willingly suffering the necessary injury,

2                    NEWSOM, J., Concurring                    20-14846

and then suing—"constitute[s] an impermissible exercise of 'executive Power' in violation of Article II." *See Laufer*, 29 F.4th at 1284 (Newsom, J., concurring); *see also id.* at 1288–97 (unpacking that conclusion).

## II

Now, very briefly, what I take to be the nub of our Article III disagreement:  It's absolutely true, as Judge Grant says, that a "stigmatic" injury "accords a basis for standing only to 'those persons who are personally denied equal treatment' by the challenged discriminatory conduct."  Grant Dissental at 3 (quoting *Allen v. Wright*, 468 U.S. 737, 755 (1984) (quoting *Heckler v. Matthews*, 465 U.S. 728, 740 (1984))).  Accordingly, as Judge Grant correctly observes, Laufer's standing to sue will ultimately turn on whether she personally "experienced . . . discrimination" when she interacted with the Value Inn's website, which didn't advertise the hotel's rooms' accessibility-related features in the way that she contends the ADA's implementing regulations require—or whether, instead, she merely "witnessed" discrimination being perpetrated against others. *Id.* at 1.  Judge Grant insists that Laufer couldn't have personally experienced any discrimination or suffered any stigmatic harm because, as all here agree, she never intended to stay at the Value Inn. *Id.* at 3–4, 8.

I understand Judge Grant to be making either (or both) of two slightly different objections.  First, although the Value Inn's website might discriminate against *other* disabled internet users—namely, bona fide would-be tourists looking to book rooms—

*Laufer* herself couldn't have personally experienced that discrimination because she had no intention to travel. And second, whatever it was that Laufer experienced, it wasn't "discrimination" because *real* discrimination occurs on the ground, not at a computer terminal.

To those eminently intuitive points, I'll offer brief responses: To the first, it seems to me that if would-be travelers personally experience discrimination on the Value Inn's website, then Laufer must as well—because she and they have *the exact same experience*. The hotel displays the very same content to them on the very same webpage, and they view and interact with that content in the very same way. The only thing that distinguishes Laufer is her motivation—her tester status—which, as Judge Grant acknowledges, doesn't (under current law) independently deprive her of Article III standing. *See* Grant Dissental at 7–8.

To the second point—that Laufer didn't experience any real discrimination while sitting at her computer—I'd add only that we shouldn't conflate the ultimate merits (or demerits) of Laufer's lawsuit with her standing to bring it. We may well doubt that Laufer's ADA claim can go the distance. We might think, as Judge Grant seems to, that the website-based "discrimination" that Laufer alleges simply isn't actionable under the ADA.[1] Speaking for myself,

---

[1] Or, perhaps, that 28 C.F.R. § 36.302(e)(1)(ii)—the regulation that requires hotel websites to provide sufficiently detailed description of rooms' accessible

I'm not at all sure that Judge Grant is wrong about that. But—and to me it's a pretty big but—our suspicion of Laufer's merits argument shouldn't taint our standing analysis. *See, e.g., Culverhouse v. Paulson & Co.*, 813 F.3d 991, 994 (11th Cir. 2016) ("[I]n reviewing the standing question, the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims.") (alteration in original). And I'm just not convinced that Article III itself distinguishes between online and in-person "discrimination."[2] Rather, it seems to me that whether the ADA

---

features—doesn't create substantive rights, or even that the ADA's private cause of action doesn't extend to the statute's implementing regulations.

[2] To be clear, the fact that the discrimination Laufer alleged didn't occur in person, but rather occurred online—in the experience that she had on the hotel's website—distinguishes this case from Judge Grant's hypothetical about Googling photos of a grocery store. *See* Grant Dissental at 7 n.5. Laufer's complaint doesn't focus on any ADA violations that might (or might not) be occurring on the ground at the Value Inn, or even any allegations that the hotel's website depicted brick-and-mortar violations. If that's all Laufer's complaint alleged, then I would agree that she lacked standing because unlike the website, which she visited and experienced firsthand, she hasn't visited or experienced the Value Inn itself and has no present plan to do so. What the panel concluded Laufer had standing to pursue was her complaint's explicit claim that the website *itself* discriminates by making it harder for disabled users to identify and book accessible rooms online. *See Laufer*, 29 F.4th at 1271 (quoting Laufer's complaint for the proposition that she "allege[d] that she has suffered and continues to suffer 'frustration and humiliation as the result of discriminatory conditions present' on the website, and that the site contributed to her 'sense of isolation and segregation'"); *see also, e.g.*, Doc. 3 ¶ 18 ("By

prohibits the sort of thing that Laufer has alleged—whatever it was—is a question that should be addressed under Rule 12(b)(6) or at summary judgment, not under Rule 12(b)(1).

### III

I'll close with a coda of sorts: Recent events have vindicated our decision not to rehear this case en banc. Since the voting closed, the Supreme Court agreed to consider another of Deborah Laufer's (many) cases, which arises out of the First Circuit and presents closely related standing issues. *See Acheson Hotels, LLC v. Laufer*, No. 22-429, 2023 WL 2634524 (Mem.); *see also* Pryor Statement at 1–2. As I said in my panel-stage concurrence, the Supreme Court's "stigmatic"- and "informational"-injury precedents—*Heckler* and *Allen*, as well as *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)—present "[l]ots of questions . . . and not many answers." *Laufer*, 29 F.4th at 1287 (Newsom, J., concurring). The law in those areas, I continued, will likely "remain deeply unsettled until the Supreme Court steps in to provide additional guidance." *Id*. Happily, the Court has now "step[ped] in"—those of us in middle management eagerly await its "guidance."

---

encountering the discriminatory conditions at Defendant's website . . . ."); *id*. ("Because this online reservation system discriminates against Plaintiff . . . .").

20-14846                    GRANT, J., Dissenting                    1

GRANT, Circuit Judge, joined by BRANCH, LUCK, and LAGOA, Circuit Judges, dissenting from the denial of rehearing en banc:

The panel opinion in this case concludes that serial plaintiff Deborah Laufer has Article III standing under a theory of "stigmatic injury" because she felt "frustration and humiliation" and a "sense of isolation and segregation" when she saw that a hotel—one that she admittedly did not intend to visit—was not complying with ADA regulations on its website. *Laufer v. Arpan LLC*, 29 F.4th 1268, 1270–71, 1274–75 (11th Cir. 2022). That holding is straightforwardly precluded by the Supreme Court's decision in *Allen v. Wright*, which disallowed stigmatic injury claims for those who had witnessed, rather than experienced, discrimination. 468 U.S. 737, 746, 755–56 (1984). I do not ordinarily write when this Court denies rehearing en banc. But I do so here to highlight both the doctrinal problems with the panel's holding and the practical impact of that holding on the thousands of hotels across this Circuit now subject to Laufer's suits under this new theory of standing. I respectfully dissent from this Court's decision to deny rehearing en banc.[1]

---

[1] The opinion "respecting the denial of rehearing en banc" is correct that this appeal does not exist in a vacuum. Nor, I will add, does this denial of rehearing en banc. Lest there be any confusion, this Court voted to deny rehearing en banc before the Supreme Court granted certiorari in *Acheson Hotels v. Laufer*, No. 22-429, 2023 WL 2634524 (Mem.), and before the panel stayed the issuance of the mandate in this case. In any event, I continue to believe that this Court should consider this case en banc and reject the stigmatic injury theory adopted in the panel opinion. Though I hope that the Supreme Court

⋆    ⋆    ⋆

The central question in this case is whether Deborah Laufer has Article III standing to file suit. She alleges that a hotel harmed her when she saw that its website lacked accessibility information required by Americans with Disabilities Act regulations. Laufer argued that this caused a so-called "informational injury"—she says she was injured when the hotel did not provide accessibility information about its rooms, even though she had no intention of staying there and even though she had no other personal need for the information. But the panel here took a different approach. Seeing that Laufer had alleged "frustration and humiliation," the panel

---

will address the problem of stigmatic injury in *Acheson Hotels*, I am not so bold as to presume that it will do so. *See, e.g.*, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342–43 (2016) (remanding to the Ninth Circuit without taking a position on whether that Court's ultimate conclusion that the plaintiff had adequately alleged injury in fact was correct). After all, the First Circuit declined to address stigmatic injury in its own decision. *Laufer v. Acheson Hotels, LLC*, 50 F.4th 259, 275 (1st Cir. 2022). But regardless of what the Supreme Court chooses to do, we certainly could take responsibility for getting it right ourselves in the meantime—particularly since we are the only Circuit that has decided the question on this basis. We also could have granted en banc review and *then* stayed the case so that we could course correct if the Supreme Court chose not to address stigmatic injury. But given that we have chosen as a Court to do neither, and mindful of the numerous instances in which members of the Supreme Court have expressed the value of hearing multiple perspectives on difficult issues as cases percolate through the federal courts, I hope that this opinion—and its dialogue with my valued colleagues on an important issue of standing—contributes helpfully to the development of the law.

held, after seeking supplemental briefing, that she had suffered an emotional injury from illegal discrimination, one that rose to the level of a "concrete stigmatic injury." *Laufer*, 29 F.4th at 1274–75.

That conclusion—adopted by none of the other courts of appeals considering Laufer's functionally identical lawsuits—runs headlong into well-established limitations on stigmatic injury. In *Allen v. Wright*, the Supreme Court explained that while stigmatic harm "is sufficient in some circumstances to support standing," it "accords a basis for standing only to 'those persons who are personally denied equal treatment' by the challenged discriminatory conduct." 468 U.S. at 755 (quoting *Heckler v. Mathews*, 465 U.S. 728, 740 (1984)); *see also, e.g.*, *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166–67 (1972). To be sure, the panel's opinion recites this essential limitation—but it ultimately ignores it. *Laufer*, 29 F.4th at 1274 n.4. The panel entirely fails to consider whether Laufer herself faced discrimination. Instead, it simply assumes—without analysis—that Laufer "suffered illegal discrimination." *Id.* at 1274. And "because her emotional injury is *her* emotional injury," the panel concludes that Laufer's stigmatic injury is also particularized. *Id.* at 1274–75.

That cannot be right. Laufer, sitting at her computer in Florida, visits the websites of hotels across the United States looking for evidence of ADA regulatory violations—and then sues when she finds it. But her lawsuits have nothing to do with anything other than her web browsing. Here, for example, the district court concluded that Laufer "never intended to visit" the hotel and had "no

personal need for the information missing from the websites." *Id.* at 1271 n.1. Laufer does not dispute these facts (indeed, she admits them), and her complaint states only that she "visited the websites for the purpose of reviewing and assessing the accessible features."

With these allegations, Laufer cannot show that she was "personally denied equal treatment" by the hotel's allegedly discriminatory conduct.[2] *Allen*, 468 U.S. at 755 (quotation omitted). At most, she observed that other disabled people may be hindered by the hotel's alleged regulatory violations if *they* try to book a room. But identifying a problem that might affect a third party is not the same thing as a personal denial of equal treatment. Even so, at least according to the panel's decision, Laufer has standing so long as she can show that she feels frustration by proxy from a potential lack of accommodation for *other* guests.[3] *See Laufer*, 29 F.4th at 1274–75.

---

[2] Judge Newsom says that Laufer and a would-be traveler have the exact same experience on the website—and thus both would have standing. Newsom Concurrence at 3. But remember, the panel's opinion does not rely on informational injury at all, so stigma cannot be a downstream effect of a denial of information. On its own, stigmatic injury "requires identification of some concrete interest with respect to which" the plaintiff is "personally subject to discriminatory treatment." *Allen*, 468 U.S. at 757 n.22. A would-be traveler could satisfy this requirement because his or her concrete interest in staying at the hotel is being personally subjected to discrimination. Laufer cannot—she has disclaimed any interest at all in staying at the hotel.

[3] In this way, it is almost as if the panel granted standing to Laufer based only on her status as an "offended observer." While that theory may be recognized in this Circuit in a narrow set of establishment clause cases, its constitutional

20-14846                 GRANT, J., Dissenting                        5

The Supreme Court has rejected this discrimination-at-a-distance approach, and so should we. As an Article III court, we have the "power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019) (Barrett, J.)). But the panel's opinion transforms Laufer (along with other would-be plaintiffs who are sure to follow) into roving attorneys general from the comfort of their own homes. This brings *Allen*'s warning to life: If this type of "abstract stigmatic injury were cognizable," the Supreme Court said, "standing would extend nationwide to all members" of a particular group, no matter how remote their connection to the facts on the ground. *Allen*, 468 U.S. at 755–56; *see also TransUnion*, 141 S. Ct. at 2205–06.

"Constitutional limits on the role of the federal courts preclude such a transformation"—but it is becoming a reality in this

---

legitimacy is up for debate. *See Kondrat'yev v. City of Pensacola*, 949 F.3d 1319, 1324 (11th Cir. 2020); *Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067, 2098 (2019) (Gorsuch, J., concurring in the judgment) (explaining that the "'offended observer' theory of standing has no basis in law"); *City of Ocala v. Rojas*, 143 S. Ct. 764, 766–68 (Thomas, J., dissenting from denial of certiorari) (expressing "serious doubts" about the constitutional legitimacy of offended observer standing); *Kondrat'yev*, 949 F.3d at 1335–37 (Newsom, J., concurring) (noting that "offended observer" standing is "plain wrong" (quotation omitted)); *cf. In re Navy Chaplaincy*, 534 F.3d 756, 763 (D.C. Cir. 2008) (Kavanaugh, J.) ("As the Supreme Court has often stated, mere personal offense to government action does not give rise to standing to sue.").

Circuit. *Allen*, 468 U.S. at 756. In fact, new lawsuits from new plaintiffs have already been filed based on this expansive stigmatic-injury-by-association approach. *See, e.g.*, *Lugo v. Island Harbor Beach Club, LLC*, No. 22-cv-66, 2022 WL 1773973, *2 (M.D. Fla. June 1, 2022) ("Lugo fashioned his pleading to fall in line with *Laufer*."). As Laufer herself put it in a recent Tenth Circuit brief, "Stigmatic Injury Completely Changes The Analysis." Appellant's Opening Brief at 11, *Laufer v. Red Door 88, LLC*, Nos. 22-1055, 22-1106, 2022 WL 2183350 (10th Cir. June 8, 2022).[4] Indeed it does. Endorsing a theory of stigmatic injury here performs an end-run around Article III standing limitations, allowing plaintiffs to google their way to lawsuits that are totally unrelated to the suffering of actual harm.[5]

Any suggestion that rejecting Laufer's new theory threatens tester standing reveals a misunderstanding of both Laufer's claim

---

[4] Laufer, unsurprisingly, is also adjusting her own litigation strategy in response to our Court's decision. Before, Laufer submitted carbon copy briefs that did not advance a theory of stigmatic injury in the different circuits. *See, e.g.*, Brief of Appellant, *Laufer v. Naranda Hotels, LLC*, 60 F.4th 156 (4th Cir. 2023) (No. 20-2348), 2021 WL 960904; Brief of Appellant, *Laufer v. Acheson Hotels, LLC*, 50 F.4th 259 (1st Cir. 2022) (No. 21-1410), 2021 WL 3030390. And as the panel admits, her briefing to this Circuit did not argue that she alleged stigmatic injury. *See Laufer*, 29 F.4th at 1274 n.5. But that changed after our decision.

[5] To take one example, if Laufer has standing here, she would also have standing if she identified a potential physical access problem by reviewing online photos of a grocery store that she never intended to visit, and then alleged emotional injury based on her feelings of stigma. Remarkable.

20-14846                GRANT, J., Dissenting                7

and tester standing itself.  To start, tester standing is about motivation, not injury, and the Supreme Court has never said that tester status offers an exception to Article III's standing requirements. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374–75 (1982) (plaintiffs who were given truthful information did not suffer an injury).  Nor have we.  *See Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328–29 (11th Cir. 2013) (tester plaintiff must satisfy all three requirements for Article III standing).  And for good reason—these requirements are an "irreducible constitutional minimum." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quotation omitted).  We should be especially alert to these requirements in tester cases, which present a special risk that the judicial power will be invoked by "'concerned bystanders,' who will use it simply as a 'vehicle for the vindication of value interests.'"  *Diamond v. Charles*, 476 U.S. 54, 62 (1986) (quoting *United States v. SCRAP*, 412 U.S. 669, 687 (1973)).

That's why, in successful tester cases, the plaintiffs have shown that they personally suffered discrimination or other harm—even if that harm was invited.  *See Havens Realty*, 455 U.S. at 368 (denied truthful housing information after personally applying for housing); *Pierson v. Ray*, 386 U.S. 547, 549, 552 (1967) (arrested for using segregated facilities); *Evers v. Dwyer*, 358 U.S. 202, 203–204 (1958) (prohibited from sitting in the front of a public bus); *Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1646–47 (2022) (restricted from using post-election campaign funds to pay back candidate's personal loan to campaign); *Houston*, 733 F.3d at 1326

(prevented from accessing supermarket due to lack of physical accommodation). None of these cases found injury based on an observation that some other person may experience discrimination some other time.

Laufer is different. Unlike those plaintiffs, she has not personally experienced any harm at all, at least under the standing theory adopted by the panel. Instead, she has noticed that other people might not have the information they need to seek a room. Whatever emotional distress that may cause her (time after time, for hotel after hotel), it is not a concrete and particularized injury.

Laufer has brought hundreds of nearly identical suits across the country—no matter how remote her connection to the targeted hotels. And the circuits are divided over whether she has alleged standing under her "informational injury" rationale. *Compare Laufer v. Acheson Hotels, LLC*, 50 F.4th 259, 263 (1st Cir. 2022), *and Laufer v. Naranda Hotels, LLC*, 60 F.4th 156, 162 (4th Cir. 2023), *with Laufer v. Ganesha Hosp. LLC*, No. 21-995, 2022 WL 2444747, at *2 (2d Cir. July 5, 2022), *and Laufer v. Mann Hosp., L.L.C.*, 996 F.3d 269, 273 (5th Cir. 2021), *and Laufer v. Looper*, 22 F.4th 871, 877–81 (10th Cir. 2022); *see also Laufer*, 29 F.4th at 1276 (Jordan, J., concurring). That split reflects uncertainties in the Supreme Court's standing jurisprudence that merit serious consideration.[6] Indeed, the Supreme Court has agreed to consider the First

---

[6] *Havens Realty*, for example, may be in tension with *TransUnion*'s suggestion that an informational injury is cognizable only when the plaintiff identifies

20-14846                GRANT, J., Dissenting                9

Circuit's conclusion that Laufer had standing to bring a similar law-suit because of an informational injury. *Acheson Hotels, LLC v. Laufer*, No. 22-429, 2023 WL 2634524 (Mem.). But whatever questions may exist about informational injury, the answer here is clear: concluding that a plaintiff can establish a concrete and personalized injury by noting accessibility problems that other people may suffer goes far beyond both the limits of the Constitution and the holding of *Allen v. Wright*. In holding to the contrary, this Circuit stands alone. I respectfully dissent from the decision not to rehear this case en banc.

---

"downstream consequences" from failing to receive the required information. *TransUnion*, 141 S. Ct. at 2214 (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)); *see Havens Realty*, 455 U.S. at 374.