**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 20-2348**

───────────────

DEBORAH LAUFER,

            Plaintiff – Appellant,

      v.

NARANDA HOTELS, LLC, A Maryland Corporation,

            Defendant – Appellee.

───────────────

Appeal from the United States District Court for the District of Maryland, at Baltimore. Stephanie A. Gallagher, District Judge.  (1:20-cv-02136-SAG)

───────────────

Argued:  January 27, 2022                    Decided:  February 15, 2023

───────────────

Before KING, THACKER, and HARRIS, Circuit Judges.

───────────────

Vacated and remanded by published opinion.  Judge King wrote the opinion, in which Judge Thacker and Judge Harris joined.

───────────────

**ARGUED:**  Thomas B. Bacon, THOMAS B. BACON, PA, Orlando, Florida, for Appellant.  Steven Joseph Parrott, DECARO, DORAN, SICILIANO, GALLAGHER & DEBLASIS, LLP, Bowie, Maryland, for Appellee.  **ON BRIEF:** Tristan W. Gillespie, LAW OFFICE OF TRISTAN W. GILLESPIE, Johns Creek, Georgia, for Appellant.

───────────────

KING, Circuit Judge:

Deborah Laufer, the plaintiff in this civil action on appeal from the District of Maryland, is a self-professed "tester" who has filed hundreds of similar lawsuits throughout the country under Title III of the Americans with Disabilities Act (the "ADA"), *see* 42 U.S.C. §§ 12181-12189.  Laufer complains of hotel reservation websites that do not allow for reservation of accessible guest rooms or provide sufficient accessibility information. Here, the defendant is Naranda Hotels, LLC, as the owner of the Sleep Inn & Suites Downtown Inner Harbor in Baltimore.

For reasons explained in its Memorandum Opinion of December 2020, the district court dismissed Laufer's ADA claim against Naranda for lack of Article III standing to sue. *See Laufer v. Naranda Hotels, LLC*, No. 1:20-cv-02136 (D. Md. Dec. 16, 2020), ECF No. 26 (the "Dismissal Opinion").  In so doing, the court followed local precedents that had been established in separate District of Maryland actions initiated by Laufer. Meanwhile, other district courts and courts of appeals have confronted Laufer's lawsuits and likewise concluded she could not proceed.  Additional federal courts, however, have seen things differently and recognized Laufer's Article III standing to pursue her ADA claims.  Upon careful consideration of the competing views, we are satisfied to join the latter group and thus vacate the district court's judgment and remand for further proceedings.

2

I.

A.

Laufer filed her operative Amended Complaint against Naranda in August 2020, asserting a single ADA claim and seeking declaratory and injunctive relief, plus attorney's fees and costs. *See Laufer v. Naranda Hotels, LLC*, No. 1:20-cv-02136 (D. Md. Aug. 17, 2020), ECF No. 4 (the "Complaint"). The Complaint invokes Title III of the ADA, which prohibits discrimination on the basis of disability in places of public accommodation. *See* 42 U.S.C. § 12182(a) (providing that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns . . . a place of public accommodation"); *id.* § 12188(a) (permitting individuals with disabilities to bring enforcement actions under Title III for injunctive relief).

According to the Complaint, Laufer is a resident of Pasco County, Florida, who qualifies as an individual with a disability under the ADA in that she "is unable to engage in the major life activity of walking more than a few steps without assistive devices." *See* Complaint ¶ 1; *see also* 42 U.S.C. § 12102(1)(A) (defining "disability" for purposes of the ADA to include "a physical or mental impairment that substantially limits one or more major life activities"). Laufer sometimes uses a cane but more often relies on a wheelchair because she "has limited use of her hands." *See* Complaint ¶ 1. The Complaint outlines Laufer's accessibility needs with regard to hotels, including "handicap parking spaces" of sufficient width and location; passageways that are "free of obstructions"; "door knobs,

3

sink faucets, [and] other operating mechanisms" that are "lowered so that [she] can reach them" and that do not require "tight grasping, twisting of the wrist or pinching"; bathroom "grab bars"; and doorways with "proper clearance." *Id.*

The Complaint discloses that Laufer "is an advocate of the rights of similarly situated disabled persons and is a 'tester' for the purpose of asserting her civil rights and monitoring, ensuring, and determining whether places of public accommodation and their websites are in compliance with the ADA." *See* Complaint ¶ 2. Additionally, the Complaint asserts that the Sleep Inn & Suites Downtown Inner Harbor constitutes a place of public accommodation for purposes of the ADA — specifically, a place of lodging — and that Naranda, as its owner, is required to comply with the ADA and its implementing regulations. *Id.* ¶¶ 3, 6.

The federal regulation at the heart of Laufer's ADA claim is 28 C.F.R. § 36.302(e), which concerns the responsibilities of the owner of a place of lodging "with respect to reservations made by any means, including . . . through a third party." *See* 28 C.F.R. § 36.302(e)(1). We refer herein to § 36.302(e) as the "Hotel Reservation Regulation." Two paragraphs of subsection (1) of the Hotel Reservation Regulation — paragraphs (i) and (ii) — are particularly relevant to Laufer's claim. Paragraph (i) provides that a hotel owner must "ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms." *Id.* § 36.302(e)(1)(i). And paragraph (ii) provides that a hotel owner must "[i]dentify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with

4

disabilities to assess independently whether a given hotel or guest room meets his or her

accessibility needs." *Id.* § 36.302(e)(1)(ii).[1]

---

[1] In her Complaint, Laufer recites subsection (1) of the Hotel Reservation Regulation in full. *See* Complaint ¶ 7. Subsection (1) contains a total of five paragraphs and reads as follows:

> Reservations made by places of lodging. A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party —
>
> (i)   Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;
>
> (ii)  Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs;
>
> (iii) Ensure that accessible guest rooms are held for use by individuals with disabilities until all other guest rooms of that type have been rented and the accessible room requested is the only remaining room of that type;
>
> (iv)  Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms requested are blocked and removed from all reservations systems; and
>
> (v)   Guarantee that the specific accessible guest room reserved through its reservations service is held for the reserving customer, regardless of whether a specific room is held in response to reservations made by others.

*See* 28 C.F.R. § 36.302(e)(1). In its subsection (2), the Hotel Reservation Regulation identifies an exception to the requirements in paragraphs (iii), (iv), and (v) of subsection (1). *Id.* § 36.302(e)(2). The last provision, subsection (3), specifies that the Hotel Reservation Regulation applies "to reservations made on or after March 15, 2012." *Id.* § 36.302(e)(3).

Laufer maintains that the Hotel Reservation Regulation extends to hotel reservation websites, whether operated by the hotel owner or a third party. *See* Complaint ¶ 9. That is, Laufer insists that hotel reservation websites must allow "individuals with disabilities [to] make reservations for accessible guest rooms" just as they allow other individuals to reserve guest rooms. *See* 28 C.F.R. § 36.302(e)(1)(i). Moreover, such websites must sufficiently "[i]dentify and describe accessible features in the hotels and guest rooms." *Id.* § 36.302(e)(1)(ii).

The Complaint reflects that, prior to its filing, Laufer had visited third-party hotel reservation websites for Naranda's Sleep Inn & Suites Downtown Inner Harbor on five separate days in July 2020, including websites located at booking.com, trip.com, priceline.com, agoda.com, expedia.com, and orbitz.com. *See* Complaint ¶¶ 9-10. Those visits were expressly "for the purpose of reviewing and assessing the accessible features at the [hotel] and ascertain[ing] whether they meet the requirements of [the Hotel Reservation Regulation] and [Laufer's] accessibility needs." *Id.* ¶ 10. The Complaint alleges that none of the six websites allowed for reservation of accessible guest rooms or provided sufficient accessibility information, thereby establishing multiple violations of the Hotel Reservation Regulation by Naranda. *Id.*

As of the time of filing the Complaint, Laufer intended to revisit Naranda's hotel reservation websites consistent with the so-called "system" described in the Complaint for testing compliance with the Hotel Reservation Regulation. *See* Complaint ¶ 11. Under that system, Laufer typically "visits [a hotel reservation website] multiple times prior to the complaint being filed, then visits again shortly after the complaint is filed." *Id.* If she

6

subsequently obtains a judgment or reaches a settlement agreement in the case, "she records the date by which the [hotel reservation website] must be compliant and revisits when that date arrives." *Id.*

To be sure, the Complaint is not a model of clarity in explaining the legal theories of Laufer's ADA claim, including how she may possess Article III standing to sue Naranda. Nevertheless, the Complaint alleges that Laufer has suffered an informational injury, i.e., that Naranda's violations of the Hotel Reservation Regulation have "deprive[d] her of the information required to make meaningful choices for travel." *See* Complaint ¶ 13. The Complaint also alleges that Laufer has sustained a stigmatic injury, i.e., that she "has suffered . . . frustration and humiliation as the result of the discriminatory conditions present at [Naranda's hotel reservation websites]." *Id.* Notably, the Complaint does not mention any travel plans, including whether Laufer had a plan to travel to or through the Baltimore area such that she actually needed to book a hotel room there.

B.

In September 2020, Naranda filed a motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing to sue and under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. On the standing issue, Naranda argued that Laufer cannot pursue her ADA claim because the Complaint merely identifies her as a "tester" and does not allege any travel plans reflecting a need to book a hotel room in the Baltimore area. That argument prompted Laufer to attach a declaration to her response in opposition to Naranda's motion, attesting that she planned to travel throughout Maryland, including the Baltimore area, once the COVID-19 crisis was over

7

and it was thus safe to do so.  The district court conducted an evidentiary hearing in early December 2020 that focused on the definiteness and veracity of Laufer's alleged travel plans, which — consistent with then-recent District of Maryland precedents — the court deemed to be key to the standing issue.

Later in December 2020, the district court rendered its decision dismissing Laufer's ADA claim for lack of Article III standing to sue, without reaching and ruling on the colorability of that claim.  *See* Dismissal Opinion 20 (specifying that dismissal was for "jurisdictional defect" of "lack of standing").  The court's decision was largely based on findings not only that Laufer's alleged travel plans were too indefinite to establish standing, but also that Laufer lacked credibility.  *See id.* at 13 (explaining that inconsistencies in Laufer's hearing testimony and other evidence "significantly undermine her credibility, such that the Court does not believe her alleged plans to visit Maryland post-COVID are genuine").  Laufer timely noted this appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

Pursuant to Article III of the Constitution, the jurisdiction of the federal courts is limited to "Cases" and "Controversies."  *See* U.S. Const. art. III, § 2.  The Supreme Court has long understood Article III "to require that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions."  *See Carney v. Adams*, 141 S. Ct. 493, 498 (2020).  And the Court has identified the doctrine of standing as a means to implement that requirement.  *Id.*

In order to possess Article III standing to sue, a plaintiff must satisfy the three elements enunciated by the Court in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (culling elements from prior decisions). Under the first *Lujan* element, "the plaintiff must have suffered an 'injury in fact' — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *See* 504 U.S. at 560 (citations and internal quotation marks omitted). The second element requires "a causal connection between the injury and the conduct complained of." *Id.* As for the third element, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotation marks omitted). Additionally, where injunctive relief is sought, the plaintiff must show a "real or immediate threat that [she] will be wronged again." *See City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983).

When assessing whether a plaintiff possesses Article III standing to sue, a court "accept[s] as valid the merits of [the plaintiff's] legal claims." *See Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1647 (2022); *see also Warth v. Seldin*, 422 U.S. 490, 500 (1975) (recognizing that "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal"). Further, a court "must look to the facts at the time the complaint was filed." *See Wild Va. v. Council on Env't Quality*, 56 F.4th 281, 293 (4th Cir. 2022). A district court may limit its standing inquiry to the allegations of the complaint or, if there are any material factual disputes, it may conduct an evidentiary hearing. *See Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017). On appeal, where a district court has conducted such a hearing, we review relevant findings of fact for

9

clear error. *See Piney Run Pres. Ass'n v. Cnty. Comm'rs*, 268 F.3d 255, 262 (4th Cir. 2001). We otherwise "consider the legal question of whether [a plaintiff] possesses standing to sue as a de novo matter." *Id.*

Here, the issue is whether Laufer possesses Article III standing to sue Naranda based on an injury — specifically, an informational injury or a stigmatic injury — that meets the requirements of the three *Lujan* elements. In dismissing Laufer's ADA claim against Naranda for lack of standing, the district court relied on local precedents concluding in analogous District of Maryland actions that Laufer asserted no qualifying informational or stigmatic injury. *See* Dismissal Opinion 7 (citing *Laufer v. Ft. Meade Hosp., LLC*, No. 8:20-cv-01974 (D. Md. Nov. 10, 2020), ECF No. 8; *Laufer v. Bre/Esa P Portfolio, LLC*, No. 1:20-cv-01973 (D. Md. Nov. 19, 2020), ECF No. 17). As the court saw it, Laufer must demonstrate something more than simply being a "tester" — with that something more being a definite and credible plan to travel to the Baltimore area and book a hotel room there. *Id.* at 7-10. Because Laufer did not prove such travel plans, the court ruled that her alleged injuries are not concrete, particularized, and actual or imminent in satisfaction of the first *Lujan* element of an injury in fact. *Id.* at 10-20.

At that point in time, many other district courts had wrestled with the issue of Laufer's standing — with varying results — but no court of appeals had done so. Thereafter, the Fifth and Tenth Circuits ruled against Laufer, and then the Second Circuit ruled against a similarly situated plaintiff named Owen Harty. *See Laufer v. Mann Hosp., L.L.C.*, 996 F.3d 269 (5th Cir. 2021); *Laufer v. Looper*, 22 F.4th 871 (10th Cir. 2022); *Harty v. W. Point Realty, Inc.*, 28 F.4th 435 (2d Cir. 2022). Like the Maryland district

10

court, the Second, Fifth, and Tenth Circuits reasoned that the plaintiffs failed to satisfy the first *Lujan* element because they did not sufficiently allege or prove an intention or need to actually book rooms at the defendants' hotels.[2]

Next, however, a three-judge panel of the Eleventh Circuit unanimously concluded that Laufer possessed Article III standing to sue based on her allegation of a stigmatic injury. *See Laufer v. Arpan LLC*, 29 F.4th 1268 (11th Cir. 2022). That decision spawned three concurring opinions, one from each of the panel members, including an opinion stating that Laufer also had standing premised on an alleged informational injury. *See id.* at 1275 (Jordan, J., concurring). Finally, the First Circuit recently ruled for Laufer based on her allegation of an informational injury alone. *See Laufer v. Acheson Hotels, LLC*, 50 F.4th 259 (1st Cir. 2022). In both the First and Eleventh Circuit cases, Laufer admitted that she had no intention or need to book rooms at the defendants' hotels, but the courts did not deem that admission to be an impediment to standing.

As explained below, similar to the First Circuit decision and the pertinent Eleventh Circuit concurring opinion, we conclude that Laufer's allegation of an informational injury accords her Article III standing to sue Naranda — whether or not she ever had a definite and credible plan to travel to the Baltimore area. In light of our conclusion, we do not

---

[2] After determining that plaintiff Harty lacked Article III standing to sue, the Second Circuit relied on its *Harty* precedent to rule against Laufer by an unpublished decision in separate proceedings. *See Laufer v. Ganesha Hosp. LLC*, No. 21-995 (2d Cir. July 5, 2022). The D.C. Circuit has similarly concluded in an unpublished decision that Laufer could not pursue her ADA claims. *See Laufer v. Alamac Inc.*, No. 21-7056 (D.C. Cir. Sept. 10, 2021).

11

unnecessarily reach and decide if Laufer's allegation of a stigmatic injury serves as an additional basis for standing. We also do not unnecessarily review the district court's factual findings with respect to Laufer's travel plans, as those findings are not relevant to our resolution of the standing question.[3]

## A.

The conclusion that Laufer's allegation of an informational injury accords her Article III standing to sue Naranda is compelled by a line of Supreme Court decisions that begins with *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). That line of decisions also includes *Public Citizen v. United States Department of Justice*, 491 U.S. 440 (1989), and *Federal Election Commission v. Akins*, 524 U.S. 11 (1998).

## 1.

In pertinent part, the 1982 decision in *Havens Realty* addressed the question of whether one of the plaintiffs, who was Black and had been acting as a "tester," possessed Article III standing to pursue a claim for damages under the Fair Housing Act of 1968 after defendant Havens Realty falsely told her it had no apartments to rent. *See* 455 U.S. at 366-70. The Court described "testers" as "individuals who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence

---

[3] Unlike the First and Eleventh Circuit cases, Laufer has not admitted in this appeal that she had no intention or need to book a room at the defendant's (here, Naranda's) hotel when she discovered the alleged violations of the Hotel Reservation Regulation. In any event, Laufer does not challenge the district court's factual findings on appeal. *See* Br. of Appellant 5 n.2 ("While [Laufer] submits that the [district court's] findings are arbitrary and capricious, [she] is confining this appeal to the [court's] legal interpretation that [an] intent to book a room is required.").

of unlawful steering practices [meant to maintain racial segregation in housing].” *Id.* at 373. Additionally, the Court specified that the Fair Housing Act’s discriminatory representation provision made it “unlawful for an individual or firm covered by the Act ‘[t]o represent to *any person* because of race, color, religion, sex, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.’” *Id.* (alteration in original) (quoting 42 U.S.C. § 3604(d)). As the Court explained, Congress had thereby “conferred on all ‘persons’ a legal right to truthful information about available housing.” *Id.*

Heeding that purpose of the Fair Housing Act, the *Havens Realty* Court deemed the discriminatory representation provision to be the type of enactment under which “[t]he actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.” *See* 455 U.S. at 373 (alteration in original) (quoting *Warth*, 422 U.S. at 500). That is, the Court recognized that the Black plaintiff possessed Article III standing to sue based on her allegation of an informational injury, stemming from Havens Realty’s violation of her right under the discriminatory representation provision to truthful information. Addressing the first *Lujan* element of an injury in fact, the Court observed that if the facts were as alleged by the Black plaintiff — that Havens Realty had “told her on four different occasions that apartments were not available in [its] complexes while informing white testers that apartments were available” — then the Black plaintiff “suffered specific injury from the challenged acts of [Havens

13

Realty] and the Art. III requirement of injury in fact is satisfied." *Id.* at 374 (internal quotation marks omitted).[4]

Significantly, the *Havens Realty* Court's standing analysis was not affected by the Black plaintiff's status as a tester with no intention to actually rent an apartment. In the Court's words:

> A tester who has been the object of a misrepresentation made unlawful under [the discriminatory representation provision] has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the [Fair Housing Act]. That the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of [the discriminatory representation provision].

*See Havens Realty*, 455 U.S. at 373-74. It was critical to the Court that, whereas Congress required a bona fide offer to prove a discriminatory refusal to sell or rent under another provision of the Fair Housing Act, "Congress plainly omitted any such requirement" to prove a violation of the discriminatory representation provision. *Id.* at 374.

Following *Havens Realty*, the Supreme Court again recognized Article III standing to sue premised on an informational injury in its 1989 decision in *Public Citizen*. Specifically, the *Public Citizen* Court confirmed the standing of public interest groups

___

[4] At the same time the *Havens Realty* Court recognized the Black plaintiff's Article III standing to sue based on her allegation of an informational injury, the Court rejected the standing claim of a white plaintiff who had been acting as a tester in concert with the Black plaintiff. *See* 455 U.S. at 374-75. That was because Havens Realty had truthfully told the white plaintiff that apartments were available to rent and thus caused him no informational injury. *Id.* at 375 (explaining that because the white plaintiff "alleged that on each occasion that he inquired he was informed that apartments *were* available," he "alleged no injury to his statutory right to accurate information concerning the availability of housing").

14

seeking access under the Federal Advisory Committee Act ("FACA") to meetings and records of the American Bar Association's Standing Committee on Federal Judiciary (the "ABA Committee") concerning potential nominees for federal judgeships. *See* 491 U.S. at 448-51. Relevant to the first *Lujan* element of an injury in fact, the Court determined that the plaintiffs had asserted a "sufficiently concrete and specific" injury by alleging that they had "specifically requested, and been refused, the names of candidates under consideration by the ABA Committee, reports and minutes of the Committee's meetings, and advance notice of future meetings." *Id.* at 448-49. In other words, the Court concluded that "refusal to permit [the plaintiffs] to scrutinize the ABA Committee's activities to the extent FACA allows constitutes a sufficiently distinct injury to provide standing to sue." *Id.* at 449. In so ruling, the Court analogized the FACA action to a lawsuit under the Freedom of Information Act, wherein plaintiffs "need [not] show more than that they sought and were denied specific agency records." *Id.* (citing Freedom of Information Act precedents).

The *Public Citizen* Court rejected the defendants' argument that the plaintiffs lacked standing because they "advanced a general grievance shared in substantially equal measure by all or a large class of citizens." *See* 491 U.S. at 448-49. The Court explained that "[t]he fact that other citizens or groups of citizens might make the same complaint after unsuccessfully demanding disclosure under FACA does not lessen [the plaintiffs'] asserted injury," just as "the fact that numerous citizens might request the same information under the Freedom of Information Act [does not deprive] those who have been denied access [of] a sufficient basis to sue." *Id.* at 449-50.

15

The Supreme Court subsequently relied on *Public Citizen* and *Havens Realty* when it recognized informational injury-based Article III standing to sue in its 1998 decision in *Akins*. There, a group of voters challenged the decision of the Federal Election Commission (the "FEC") that the American Israel Public Affairs Committee ("AIPAC") was not a "political committee" as defined by the Federal Election Campaign Act of 1971 ("FECA") and thus was not obligated to make disclosures regarding its membership, contributions, and expenditures that FECA would otherwise require. *See Akins*, 524 U.S. at 13. The Court concluded that the injury alleged by the plaintiffs — "their inability to obtain information . . . that, on [their] view of the law, the statute requires that AIPAC make public" — satisfied the first *Lujan* element of an injury in fact. *Id.* at 21. "Indeed," the *Akins* decision emphasized, the Court had already held in *Public Citizen* and *Havens Realty* "that a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *Id.* (citing *Pub. Citizen*, 491 U.S. at 449; *Havens Realty*, 455 U.S. at 373-74).

Similar to the *Public Citizen* Court, the *Akins* Court rejected the contention (now made by the defendant FEC) that the plaintiffs lacked constitutional or prudential standing to sue because their "lawsuit involves only a 'generalized grievance.'" *See* 524 U.S. at 23. Although the Court characterized it as "[t]he FEC's strongest argument," the Court went on to find it lacking because it rested on "cases where the harm at issue is not only widely shared, but is also of an abstract and indefinite nature — for example, harm to the 'common concern for obedience to law.'" *Id.* (quoting *L. Singer & Sons v. Union Pac. R.R. Co.*, 311 U.S. 295, 303 (1940)). The Court explained that a harm may be "concrete, though widely

16

shared," and that such a harm can qualify under the first *Lujan* element as an injury in fact. *Id.* at 24 (citing *Pub. Citizen*, 491 U.S. at 449-50).

Notably, both the *Public Citizen* and *Akins* decisions observed that the plaintiffs had identified uses for the information they sought. In *Public Citizen*, the plaintiffs wanted "access to the ABA Committee's meetings and records in order to monitor its workings and participate more effectively in the judicial selection process." *See* 491 U.S. at 449. And in *Akins*, the plaintiffs sought the information "to evaluate candidates for public office, especially candidates who received assistance from AIPAC, and to evaluate the role that AIPAC's financial assistance might play in a specific election." *See* 524 U.S. at 21. The *Akins* Court commented that it had "no reason to doubt [the plaintiffs'] claim that the information would help them (and others to whom they would communicate it)." *Id.* Ultimately, however, all that mattered to the *Akins* Court — and to the *Public Citizen* Court before it — was that the plaintiffs sought and were denied information to which they claimed entitlement. That the plaintiffs had a use for the information was not a factor in either the *Public Citizen* or *Akins* Article III standing analysis.

## 2.

In the case before us, Laufer asserts in part that Naranda, as the owner of a place of lodging (the Sleep Inn & Suites Downtown Inner Harbor), is required by the Hotel Reservation Regulation to provide information to individuals with disabilities on its hotel reservation websites about accessible features in the hotel and its guest rooms. That theory of her ADA claim relies on 28 C.F.R. § 36.302(e)(1)(ii), which provides that a hotel owner must "[i]dentify and describe accessible features in the hotels and guest rooms offered

17

through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs." According to Laufer, she is entitled to the accessibility information as an individual with a disability, and Naranda's failure to provide it constitutes discrimination under Title III of the ADA. Accepting that theory of Laufer's ADA claim for purposes of the standing analysis, she has alleged an informational injury that gives her Article III standing to sue under *Havens Realty*, *Public Citizen*, and *Akins*.

a.

With respect to the first *Lujan* element of an injury in fact, Laufer has alleged all that she needs to: that she has "fail[ed] to obtain information which must be publicly disclosed pursuant to a statute." *See Akins*, 524 U.S. at 21 (citing *Pub. Citizen*, 491 U.S. at 449; *Havens Realty*, 455 U.S. at 373-74). Under the *Havens Realty* line of decisions, such an informational injury is sufficiently concrete, particularized, and actual to qualify for Article III standing to sue. *See Havens Realty*, 455 U.S. at 373 (highlighting that "[t]he actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing" (alteration in original) (quoting *Warth*, 422 U.S. at 500)).

It matters not that Laufer is a tester who may have visited Naranda's hotel reservation websites to look for ADA violations in the form of noncompliance with the Hotel Reservation Regulation, and without any plan or need to book a hotel room, just as it mattered not that the Black plaintiff in *Havens Realty* was a tester who "may have approached [defendant Havens Realty] fully expecting that [she] would receive false

18

information [in contravention of the Fair Housing Act], and without any intention of buying or renting a home." *See Havens Realty*, 455 U.S. at 374. As the First Circuit cogently explained, "*Havens Realty* appears right on the nose for Laufer's case — both to her status as a tester and the injury she suffered." *See Acheson Hotels*, 50 F.4th at 269; *accord Arpan*, 29 F.4th at 1277 (Jordan, J., concurring) ("[H]as Ms. Laufer suffered a cognizable injury under Article III? The answer, I think, is yes under *Havens Realty*.").

Crucially, although the Hotel Reservation Regulation is designed "to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs," *see* 28 C.F.R. § 36.302(e)(1)(ii), nothing in the Hotel Reservation Regulation or elsewhere in the ADA expressly requires an intention to book a hotel room to prove a discriminatory failure to provide accessibility information. That is, "there is no carveout that the information need only be turned over if the person [visiting the hotel reservation website] actually wants to make a reservation." *See Acheson Hotels*, 50 F.4th at 269. Correspondingly, the Fair Housing Act provision at issue in *Havens Realty* "gave 'all persons a legal right to truthful information about available housing' and did not impose any 'bona fide offer' requirement." *Id.* (quoting *Havens Realty*, 455 U.S. at 373-74). "So if the Black tester plaintiff had standing in *Havens Realty* where the statute gave her a right to truthful information, which she was denied, then *Havens Realty* would mean that Laufer, too, has standing because she was denied information to which she has a legal entitlement." *Id.*

Additionally, *Public Citizen* and *Akins* impart that it matters not that there may be a large number of potential plaintiffs who could visit Naranda's hotel reservation websites

19

and then assert the same ADA claim that Laufer does. *See Pub. Citizen*, 491 U.S. at 449-50 ("The fact that other citizens or groups of citizens might make the same complaint after unsuccessfully demanding disclosure under FACA does not lessen [the plaintiffs'] asserted injury . . . ."). Although Laufer's alleged informational injury may be "widely shared," it is also concrete and particularized. *See Akins*, 524 U.S. at 24-25. And in any event, under Laufer's conception of her claim, there are certainly fewer persons eligible to complain about Naranda's noncompliance with the Hotel Reservation Regulation — only those who qualify as individuals with disabilities within the meaning of the ADA — than citizens entitled to seek disclosure of information under FACA and FECA, the statutes at issue in *Public Citizen* and *Akins*. *See Acheson Hotels*, 50 F.4th at 276 (underscoring that "Laufer is a person with disabilities — not just any one of the hundreds of millions of Americans with a laptop — and personally suffered the denial of information the law entitles her, as a person with disabilities, to have").

b.

Turning to the second and third *Lujan* elements, Naranda did not argue in its motion to dismiss before the district court that there is no "causal connection between [Laufer's alleged informational] injury and the conduct complained of," or that it is not "likely . . . that the injury will be redressed by a favorable decision." *See Lujan*, 504 U.S. at 560-61 (internal quotation marks omitted). Moreover, the district court's standing ruling against

20

Laufer was confined to the first *Lujan* element, and we have no basis to conclude herein that the second and third elements are not satisfied.[5]

Of course, because Laufer seeks injunctive relief, she also must show a "real or immediate threat that [she] will be wronged again." *See Lyons*, 461 U.S. at 111. As we have recognized, "when an ADA plaintiff has alleged a past injury at a particular location, his plausible intentions to thereafter return to that location are sufficient to demonstrate the likelihood of future injury." *See Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 455 (4th Cir. 2017). That raises the question in these proceedings of whether Laufer has alleged plausible intentions to return to the location of her past informational injury: Naranda's hotel reservation websites.

As it did in the district court, Naranda contends on appeal that Laufer cannot demonstrate such plausible intentions because her Complaint does not allege that she

---

[5] We acknowledge that Naranda asserts in this appeal that Laufer has not satisfied the second and third *Lujan* elements. In so doing, Naranda relies on theories it raised in the district court in support of its request for dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, and not with respect to its request under Rule 12(b)(1) for dismissal for lack of Article III standing to sue. The underlying theories include that Laufer has not shown that the lack of accessibility information on the hotel reservation websites at issue was the responsibility of Naranda, rather than the third-party websites' operators. Naranda argues on appeal that Laufer therefore has not proven that her alleged informational injury was fairly traceable to Naranda (relevant to the second *Lujan* element) or that obtaining an injunction against Naranda would remedy any ADA violations (pertinent to the third). We decline to entertain those arguments because they were not presented to the district court. *See Volvo Constr. Equip. N. Am., Inc. CLM Equip. Co.*, 386 F.3d 581, 603 (4th Cir. 2004) ("Absent exceptional circumstances, . . . we do not consider issues raised for the first time on appeal."). Nonetheless, the underlying theories may yet be germane to the colorability of Laufer's ADA claim, which the district court has not yet assessed and is free to consider on remand.

21

would "return[] to the third-party websites for purposes of booking a room or availing herself of Naranda's accommodations or services." *See* Br. of Appellee 17. Naranda thus relies on the discredited proposition that Laufer's Article III standing to sue depends on an intention to book a hotel room.

We instead agree with the First Circuit that Laufer has alleged plausible intentions to return to Naranda's hotel reservation websites as part of the "system" described in her Complaint for continually monitoring websites she finds to be in noncompliance with the Hotel Reservation Regulation. *See* Complaint ¶ 11. Laufer has thereby "given her description of her concrete plans to revisit the websites, easily accessible from her home, in the near future." *See Acheson Hotels*, 50 F.4th at 277 (alteration and internal quotation marks omitted). And she has demonstrated a likelihood that she will suffer the same informational injury again. *Cf. Nanni*, 878 F.3d at 455-57 (concluding that ADA tester could seek injunctive relief after encountering architectural barriers at interstate-adjacent marketplace, based on plausible intentions to return there during trips between his Delaware home and Baltimore-Washington, D.C. area). In sum, then, Laufer has satisfied all of the requirements to establish her Article III standing to sue Naranda for the alleged informational injury and to seek relief in the form of an injunction.

## B.

As previously mentioned, the courts of appeals that have ruled in other cases against Laufer and similarly situated plaintiff Harty have done so on the premise that those plaintiffs were obliged — but failed — to show an intention or need to actually book rooms at the defendants' hotels in order to establish informational injury-based Article III

22

standing to sue. In adopting that premise, the Second Circuit perceived that it was compelled to do so by the Supreme Court's recent decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). Meanwhile, the Fifth and Tenth Circuits deemed the contrary decisions in *Havens Realty*, *Public Citizen*, and *Akins* to be distinguishable and inapposite. None of those rulings can withstand scrutiny.

1.

In the Second Circuit's view, the Supreme Court's 2021 decision in *TransUnion* dictates that the informational injury that has been alleged by Laufer and Harty cannot constitute an injury in fact in satisfaction of the first *Lujan* element if the plaintiff visited the defendant's hotel reservation website without an intention to book a room. *See Harty*, 28 F.4th at 444 (citing *TransUnion*, 141 S. Ct. at 2214). The *TransUnion* decision concerned, in pertinent part, claims that defendant TransUnion (a credit reporting agency) sent the plaintiffs (consumers who were the subject of TransUnion credit files) copies of their credit files that "were formatted incorrectly and deprived them of their right to receive information in the format required by [the Fair Credit Reporting Act]." *See* 141 S. Ct. at 2213.

One theory presented to the *TransUnion* Court with respect to Article III standing to pursue those claims was "that the plaintiffs suffered a concrete 'informational injury' under several of [the] Court's precedents," including *Public Citizen* and *Akins*. *See TransUnion*, 141 S. Ct. at 2214. The Court disagreed with that theory, however. *Id.* Addressing why that was so, the Court led with the following explanation:

23

The plaintiffs did not allege that they failed to receive any required information. They argued only that they received it *in the wrong format*. Therefore, *Akins* and *Public Citizen* do not control here.

*Id.* The Court then added two more points. First, the Court observed:

In addition, [*Akins* and *Public Citizen*] involved denial of information subject to public-disclosure or sunshine laws that entitle all members of the public to certain information. This case does not involve such a public-disclosure law.

*Id.* And second, the Court noted:

Moreover, the plaintiffs have identified no downstream consequences from failing to receive the required information. They did not demonstrate, for example, that the alleged information deficit hindered their ability to correct erroneous information before it was later sent to third parties. An asserted informational injury that causes no adverse effects cannot satisfy Article III.

*Id.* (internal quotation marks omitted).

It was *TransUnion*'s "Moreover" passage that the Second Circuit invoked in *Harty* for the proposition that Harty's alleged informational injury was not sufficiently concrete because he had visited the defendant's hotel reservation website without an intention to book a room. As the Second Circuit saw it, "[e]ven assuming that Harty can allege that he was deprived of information to which he is entitled by the ADA, he must also allege 'downstream consequences from failing to receive the required information' in order to have an Article III injury in fact." *See Harty*, 28 F.4th at 444 (quoting *TransUnion*, 141 S. Ct. at 2214). "In other words," the court elaborated, "Harty must show that he has an interest in using the information beyond bringing his lawsuit." *Id.* (alterations and internal quotation marks omitted).

24

At bottom, the Second Circuit interpreted *TransUnion* to hold that the type of informational injury alleged in *Public Citizen* and *Akins*, as well as *Havens Realty* before them — i.e., the "fail[ure] to obtain information which must be publicly disclosed pursuant to a statute," *see Akins*, 524 U.S. at 21 (citing *Pub. Citizen*, 491 U.S. at 449; *Havens Realty*, 455 U.S. at 373-74) — is not sufficiently concrete for Article III standing to sue unless the plaintiff had a personal use for the information that was unlawfully withheld. But the Second Circuit's interpretation can be correct only if *TransUnion* overruled *Havens Realty*, *Public Citizen*, and *Akins*. Put succinctly, that is because *Havens Realty* squarely rejected any such use requirement. *See Havens Realty*, 455 U.S. at 374 (confirming that the Black tester plaintiff's lack of intention to rent an apartment did "not negate the simple fact of injury"). And although the plaintiffs in *Public Citizen* and *Akins* thereafter asserted uses for the information they sought, those asserted uses were not a factor in the *Public Citizen* and *Akins* Article III standing analyses. *See Akins*, 524 U.S. at 21; *Pub. Citizen*, 491 U.S. at 449.

We cannot accept the Second Circuit's interpretation of *TransUnion* because it cannot fairly be concluded that *TransUnion* overruled *Havens Realty*, *Public Citizen*, and *Akins*. First of all, *TransUnion* is reconcilable with the earlier precedents, in that the Court expressly distinguished the informational injuries in *Public Citizen* and *Akins* (the "fail[ure] to receive *any* required information") from the purported informational injury before it (receipt of the required information "*in the wrong format*"). *See TransUnion*, 141 S. Ct. at 2214 (first emphasis added). Only then did *TransUnion* discuss the need for "downstream consequences" and "adverse effects," *see id.* (internal quotation marks omitted), indicating

25

that any use requirement is limited to the type of informational injury at issue in *TransUnion* and does not extend to the type of informational injury presented in *Public Citizen* and *Akins*.

More importantly, as the Supreme Court itself has cautioned, its "decisions remain binding precedent until [the Court] see[s] fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality." *See Hohn v. United States*, 524 U.S. 236, 252-53 (1998). There was no statement or even suggestion in *TransUnion* that the Court was reconsidering the earlier precedents. Rather, the *TransUnion* Court distinguished *Public Citizen* and *Akins* without questioning their validity.[6]

It is also significant that in other recent decisions, both before and after *TransUnion*, the Supreme Court has treated *Havens Realty*, *Public Citizen*, and *Akins* as good law. For instance, in *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) — a decision heavily and favorably cited in *TransUnion* — the Court named *Public Citizen* and *Akins* as examples of the "some circumstances" in which "the violation of a procedural right granted by statute can be sufficient . . . to constitute injury in fact" and the plaintiff "need not allege any *additional*

---

[6] Notably, a four-Justice dissent in *TransUnion* took the position that the informational injury at issue therein was of the same type alleged in *Public Citizen*, as well as in *Havens Realty*. *See TransUnion*, 141 S. Ct. at 2221 (Thomas, J., dissenting). In asserting that the plaintiffs thus possessed Article III standing to pursue the relevant claims, the dissent underscored that "this Court has recognized that the unlawful withholding of requested information causes 'a sufficiently distinct injury to provide standing to sue.'" *Id.* (quoting *Pub. Citizen*, 491 U.S. at 449). Again, the issue was the applicability — and not the continuing vitality — of the *Havens Realty* line of decisions.

26

harm beyond the one Congress has identified." *See Spokeo*, 578 U.S. at 342. Thereafter, in the wake of *TransUnion*, the Court cited *Havens Realty* in its 2022 *Cruz* decision in support of the proposition "that an injury resulting from the application or threatened application of an unlawful enactment remains fairly traceable to such application, even if the injury could be described in some sense as willingly incurred." *See Cruz*, 142 S. Ct. at 1647. Without even a hint of criticism, the *Cruz* Court described *Havens Realty* as ruling that "a 'tester' plaintiff posing as a renter for purposes of housing-discrimination litigation still suffered an injury under Article III." *Id.*

In these circumstances, we are satisfied that *TransUnion* most assuredly did not overrule *Havens Realty*, *Public Citizen*, and *Akins*. As such, those precedents must continue to be followed where they are applicable, unless and until the Supreme Court decides otherwise. *See Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower courts] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."); *see also Acheson Hotels*, 50 F.4th at 271 & n.4 (First Circuit's rejection of argument that *TransUnion* somehow implicitly overruled *Havens Realty* and *Public Citizen*).

2.

Turning to the views of the Fifth and Tenth Circuits, those courts ruled that Laufer failed to allege an Article III injury in fact upon characterizing the *Havens Realty*, *Public Citizen*, and *Akins* decisions as distinguishable and inapposite. For its part, the Fifth Circuit

27

reasoned that "Laufer's case differs from the Supreme Court's seminal 'tester' case, *Havens Realty*," in that "[t]here, the information had some relevance to the tester because the statute forbade misrepresenting it to 'any person,' quite apart from whether the tester needed it for some other purpose." *See Mann Hosp.*, 996 F.3d at 273 (some internal quotation marks omitted). Setting aside the legal merits of that theory, it fails as an effort at differentiation. Under Laufer's conception of the ADA claims asserted here and in the Fifth Circuit, the accessibility information missing from the hotel reservation websites had some relevance to her because the Hotel Reservation Regulation required providing it to individuals with disabilities, quite apart from whether she needed it for some other purpose. The Fifth Circuit therefore did not proffer a sound basis for distinguishing *Havens Realty*. *See also Arpan*, 29 F.4th at 1281 (Jordan, J., concurring) (explaining why Fifth Circuit was "wrong on various fronts").

Taking a different tack, the Tenth Circuit distinguished *Havens Realty* on the premise that the injury there "was grounded in misrepresentation and racial animus." *See Looper*, 22 F.4th at 879. Additionally, the Tenth Circuit distinguished *Public Citizen* and *Akins* based on the fact that the plaintiffs in those cases "alleged an intent to use the information" that had been unlawfully withheld from them. *Id.* at 881. From there, the court interpreted *Public Citizen* and *Akins* to rule that there must be a use for the information or there cannot be an Article III injury in fact. *Id.* (explaining that because Laufer "did not attempt to book a room at the [defendant's hotel] and ha[d] no intent to do so," she did "not suffer[] an injury of the type recognized in *Public Citizen* or *Akins*").

28

The Tenth Circuit's analysis, however, disregarded the plain holding of the *Havens Realty* line of decisions: "that a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *See Akins*, 524 U.S. at 21 (citing *Pub. Citizen*, 491 U.S. at 449; *Havens Realty*, 455 U.S. at 373-74). Those precedents reflect that the failure to obtain information may be because of a misrepresentation (as in *Havens Realty*), or because of a wholesale refusal to provide it (as in *Public Citizen* and *Akins*). Although the allegation of racial animus certainly was relevant in *Havens Realty*, that was because it was an element of the statutory violation at issue (violation of the Fair Housing Act's discriminatory representation provision). No racial or other discriminatory animus was alleged in *Public Citizen* or *Akins*, as such animus was not an element of the statutory violations there (failure to provide information requested pursuant to FACA and FECA), and that lack of alleged animus did not deprive the plaintiffs of informational injury-based Article III standing to sue.

Furthermore, *Havens Realty*, *Public Citizen*, and *Akins* are clear that a plaintiff need not show a use for the information being sought in order to establish an injury in fact in satisfaction of the first *Lujan* element. Again, *Havens Realty* squarely rejected any such use requirement. *See Havens Realty*, 455 U.S. at 374 (confirming that the Black tester plaintiff's lack of intention to rent an apartment did "not negate the simple fact of injury"); *see also Cruz*, 142 S. Ct. at 1647 (approvingly describing *Havens Realty* as ruling that "a 'tester' plaintiff posing as a renter for purposes of housing-discrimination litigation still suffered an injury under Article III"). And although the plaintiffs in *Public Citizen* and *Akins* thereafter asserted uses for the information they sought, those asserted uses were not

29

a factor in the *Public Citizen* and *Akins* Article III standing analyses.  *See Akins*, 524 U.S. at 21; *Pub. Citizen*, 491 U.S. at 449; *see also Spokeo*, 578 U.S. at 342 (naming *Public Citizen* and *Akins* as examples of the "some circumstances" in which "the violation of a procedural right granted by statute can be sufficient . . . to constitute injury in fact" and the plaintiff "need not allege any *additional* harm beyond the one Congress has identified").[7]

For all of the foregoing reasons, the Tenth Circuit's grounds for distinguishing the *Havens Realty* lines of decisions are just as unpersuasive as the Fifth Circuit's.  *See also Acheson Hotels*, 50 F.4th at 273 (similarly criticizing Tenth Circuit's analysis); *Arpan*, 29 F.4th at 1281-82 (Jordan, J., concurring) (same).  As the First Circuit aptly put it in *Acheson Hotels*:  "We understand that our sibling circuits thought *Havens Realty* doesn't decide this case.  But we respectfully disagree.  None has convincingly explained why *Havens Realty* can't illuminate the path to decision."  *See* 50 F.4th at 273-74.  Or as the Eleventh Circuit's

---

[7] In its discussion of *Public Citizen* and *Akins* and their supposed use requirement, the Tenth Circuit invoked *TransUnion*'s rejection of the theory that the *TransUnion* plaintiffs suffered a concrete informational injury under *Public Citizen* and *Akins*.  *See Looper*, 22 F.4th at 880-81.  The Tenth Circuit described *TransUnion* as rejecting that theory "in part because 'the plaintiffs . . . identified no downstream consequences from failing to receive the required information.'"  *Id.* at 881 (quoting *TransUnion*, 141 S. Ct. at 2214).  In so doing, the Tenth Circuit suggested that *TransUnion* drew the "downstream consequences" requirement from *Public Citizen* and *Akins*, and that *TransUnion* thereby "shows why" the Tenth Circuit's reading of *Public Citizen* and *Akins* was correct.  *Id.* at 880-81.  Actually, however, *TransUnion* did not draw the "downstream consequences" requirement from *Public Citizen* and *Akins*.  Indeed, *TransUnion* distinguished *Public Citizen* and *Akins*, and only thereafter discussed the need for "downstream consequences" without any further mention of *Public Citizen* and *Akins* at all.  *See TransUnion*, 141 S. Ct. at 2214 (first specifying that "*Akins* and *Public Citizen* do not control here," and only then explaining that "[m]oreover, the plaintiffs have identified no downstream consequences from failing to receive the required information" (internal quotation marks omitted)).

30

Judge Jordan summed up in *Arpan*: "I have yet to see any court answer [the question as to why *Havens Realty* is different] persuasively. *Havens Realty* is still on the books, and we are bound to apply it here." *See* 29 F.4th at 1282 (Jordan, J., concurring).

C.

As also previously mentioned, in ruling in this case that Laufer lacks informational injury-based Article III standing to pursue her ADA claim against Naranda, the district court adhered to District of Maryland precedents. Those local precedents relied, in turn, on this Court's decision in *Griffin v. Department of Labor Federal Credit Union*, 912 F.3d 649 (4th Cir. 2019). The *Griffin* case, however, is quite different and readily distinguishable from this and the other actions that have been brought by Laufer.[8]

In *Griffin*, the visually impaired tester plaintiff sued the defendant Department of Labor Federal Credit Union under Title III of the ADA for the inaccessibility of the Credit Union's website describing its services and products. *See* 912 F.3d at 652. Of utmost significance, membership in the Credit Union was limited by federal statute to "current and former employees of the Department of Labor and their immediate families and households," and the plaintiff was "not eligible for membership in the Credit Union" and did not allege that he was "legally permitted to make use of the Credit Union's benefits." *Id.* (citing 12 U.S.C. § 1759(b)).

---

[8] Our *Griffin* decision was also invoked by the Fifth Circuit in *Mann Hospitality*, 996 F.3d at 273 & n.4, and the Tenth Circuit in *Looper*, 22 F.4th at 881 & n.6. It was distinguished by the First Circuit in *Acheson Hotels*, 50 F.4th at 272 n.5.

31

Our Court was called upon to decide whether, in those novel circumstances, the plaintiff possessed Article III standing to sue the Credit Union based on either an informational or stigmatic injury. *See Griffin*, 912 F.3d at 653-54. In rendering our decision, we emphasized that we were "address[ing] only whether this plaintiff *who is barred by law from making use of defendant's services* may sue under the ADA for an allegedly deficient website." *Id.* at 653. And we resolved that "[t]he answer to this narrow question is no." *Id.*

With respect to the existence of an informational injury, we concluded that the plaintiff was required, but failed, to show that the information he failed to obtain had "some relevance" to him. *See Griffin*, 912 F.3d at 654. As we explained, the plaintiff "sought information on the Credit Union's services, privileges, advantages, and accommodations and amenities, as well as the physical locations where those services are provided." *Id.* (internal quotation marks omitted). But that information lacked the requisite relevance to the plaintiff, in that "a federal law closes the door of the Credit Union to [him] whether or not he obtains the information he seeks." *Id.*

Our treatment of the informational injury alleged in *Griffin* was thereby different from the Supreme Court's treatment of the informational injuries at issue in *Havens Realty*, *Public Citizen*, and *Akins*. Whereas our *Griffin* decision required a use for the information being sought, the Supreme Court's *Havens Realty* line of decisions did not. That difference in treatment resulted from a difference in facts. The *Havens Realty*, *Public Citizen*, and *Akins* cases each involved a "fail[ure] to obtain information which must be publicly disclosed pursuant to a statute." *See Akins*, 524 U.S. at 21 (citing *Pub. Citizen*, 491 U.S.

32

at 449; *Havens Realty*, 455 U.S. at 373-74).  In contrast, *Griffin* involved a failure to obtain information about services that the plaintiff was "barred by law" from using.  *See Griffin*, 912 F.3d at 653 (emphasis omitted).  Consequently, we were not bound in *Griffin* to follow the *Havens Realty* line of decisions.  *Cf. TransUnion*, 141 S. Ct. at 2214 (distinguishing *Public Citizen* and *Akins* before indicating that *TransUnion* plaintiffs needed to show use for information provided in wrong format).[9]

In relying on *Griffin* in these proceedings, the Maryland district court acknowledged both that this Court "was careful to limit its holding to the facts of *Griffin*" and that the facts of Laufer's case are different, as "there is no legal impediment barring [Laufer] from reserving a room at [Naranda's hotel]."  *See* Dismissal Opinion 8-9.  Nevertheless, the district court found "*Griffin*'s underlying reasoning [to have] unmistakable force."  *Id.* at 9.  Accordingly, the district court required Laufer to demonstrate that the information she failed to obtain from Naranda's hotel reservation websites had "some relevance" to her, i.e., that when she visited the websites, she had a definite and credible plan to travel to the

---

[9] We note that the *Griffin* decision suggests that the *Akins* plaintiffs would not have possessed informational injury-based Article III standing to sue absent their allegation of a use for the information they sought.  *See Griffin*, 912 F.3d at 654 (recounting that in *Akins*, "the Supreme Court explained that plaintiffs who sought information that would 'help them . . . evaluate candidates for public office' suffered a concrete injury when they failed to receive it" (alteration in original) (quoting *Akins*, 524 U.S. at 21)).  Of course, the *Akins* decision imposes no such use requirement, as it recognized that all that is needed for an injury in fact is a "fail[ure] to obtain information which must be publicly disclosed pursuant to a statute."  *See Akins*, 524 U.S. at 21 (citing *Pub. Citizen*, 491 U.S. at 449; *Havens Realty*, 455 U.S. at 373-74).  It was therefore enough for an injury in fact in *Akins* that the plaintiffs were unable "to obtain information . . . that, on [their] view of the law, [had to be made] public."  *Id.*

Baltimore area and book a hotel room there. *Id.* (emphasis omitted) (quoting *Griffin*, 912 F.3d at 654).

The fatal flaw in the district court's analysis is that the court was not free to choose to follow our *Griffin* decision rather than the Supreme Court's *Havens Realty* line of decisions. As the district court itself recognized, the *Griffin* decision is distinguishable and thus merely persuasive. The Supreme Court's *Havens Realty* line of decisions, however, has direct application and therefore controls.

* * *

In closing, we reiterate our conclusion that Laufer's allegation of an informational injury accords her Article III standing to pursue her ADA claim against Naranda and to seek injunctive relief. We also recognize that our decision today appears to even the split among the courts of appeals at 3-3 — three circuits that have ruled in Laufer's favor based on an informational or stigmatic injury, and three that have ruled against her and similarly situated plaintiff Harty. We are confident that, as explained herein, the applicable precedents best support our position. Finally, we emphasize that the merits of Laufer's ADA claim were not before us today, that we state no opinion on the factual or legal basis of that claim, and that it is up to the district court to consider those issues in the first instance on remand.

34

III.

Pursuant to the foregoing, we vacate the judgment of the district court and remand for such other and further proceedings as may be appropriate.

*VACATED AND REMANDED*